UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PAULINE LESLIE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO: 20-CV-12264 |
| ) | |
| Individual capacity, Judge Janice W. Howe ) | |
| ) | |
| Defendant, ) | |
| ) | |

## COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Pauline Leslie brings this action against Judge Janice Howe in her individual capacity and alleges the following:

1. On September 20, 2020, the Appeals Court of Massachusetts wrote an order without issuing any notice to the Plaintiff affirming the Superior Court's decision in 2018 to dismiss the Plaintiff's complaint against an Independent Medical Evaluator ("IME") for medical malpractice[1] that a psychiatrist (J. Alexander Bodkin, M.D.) was immune from suit and absolutely privileged to commit malpractice. Judge Janice Howe issued the original order of dismissal that the appeals court relied on. The other parties' attorneys[2] in a prior civil action filed in August 2013 by the Plaintiff, in defense of the Plaintiff's claims against them as agency with the psychiatrist, stated they did not retain the psychiatrist. Their letters dated November 10 and November 27, 2017 denied they retained the psychiatrist[3].

---

[1] The Plaintiff sued the psychiatrist for his highly inappropriate, racially discriminatory and abusive conduct during an "allege" IME and other claims.

[2] Defendants, John R. Barrett and Kingstown Corp., (previously represented by Joseph H. Aronson, Esq) and Travelers Insurance Company (represented by Brian A. Suslak, Esq., and John P. Graceffa, Esq.)

[3] On November 10, 2017, Attorney Aronson (Barrett and Kingstown) said it was Travelers who retained him, and on November 27, 2017, Travelers (Suslak and Graceffa) in return said it was Aronson (Barrett and Kingstown) who retained him.

Although, the psychiatrist was retained by them to interrogate the Plaintiff on January 26, 2015 during an "alleged" IME, and they called him to falsely testify on their behalf via a pre-recorded deposition on December 10, 2015.  On May 31, 2018, the psychiatrist's counsel[4] implied the court appointed him, despite he testified against Ms. Leslie and her children in her civil case[5] in December 2015 on behalf of the other parties.

2. The Plaintiff requested Further Appellate Review (FAR) and it was denied on or about November 20, 2020 and notice was mailed on or about November 23, 2020.

## JURISDICTION AND VENUE

3. This Court has jurisdiction because this action raises federal questions under the United States Constitution pursuant to 42 U.S.C. § 1983.

4. This Court has jurisdiction because it raises a federal question under the United States Health Insurance Portability Accountability Act (HIPAA) of 1996 as amended.

5. This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343

6. This Court has supplemental jurisdiction over the Plaintiff's state law claims under 28 U.S.C. § 1367.

7. This Court has authority to grant the Plaintiff's requests for declaratory relief (28 U.S.C. § 2201 and § 2202) and injunctive relief  pursuant to Fed. R. Civil Pro. Rule 65.

## PARTIES

8. The Plaintiff, Pauline Leslie is a resident of Massachusetts and the party suffering irreparable harm.

---

[4] Bodkin was represented by John P. Puleo, Esq., who failed to file a notice of appearance when he twice appeared in court.
[5] Ms. Leslie was a victim in a December 22, 2010 rear-end Tractor Trailer collision and was injured.

9. The defendant, Judge Janice Howe works for the Commonwealth of Massachusetts Court and the party who issued the original order.

## INTRODUCTION ABOUT THE PRIOR CASE

10. The Plaintiff is a mother and was an attorney as of June 2009. On December 22, 2010, the Plaintiff was in the course of her employment as a title examiner waiting at a stoplight when she was repeatedly rear-ended by a loaded sand and gravel tractor-trailer for 1.5 city blocks before she was slammed into a parked car. The car was not drivable at the scene and was later totaled by the insurer. The Plaintiff suffered multiple injuries, including but not limited to required surgery, and anxiety (PTSD) on the road as a result of the collision. The driver (John R. Barrett) testified at his criminal trial that he heard Ms. Leslie's horn beep during the collision. He was convicted of criminal negligence in Cambridge District Court on July 21, 2011[6]. The Plaintiff brought suit against John R. Barrett ("Barrett"), Kingstown Corporation ("Kingstown")., for damages and against Travelers Insurance Co., ("Travelers") for unfair deceptive practices and abusive surveillance. In April 2014, Travelers was ordered to sever away from the case and failed to respect the Court's order.

11. Thereafter, Plaintiff was treated unfairly by the Court, where its rulings deprived her of a right to a fair and impartial trial that was laced with unfair and unbalance rulings mainly targeting the Plaintiff, and her children who are brown/black Americans. The Court made racially motivated comments (discriminatory) and openly displayed inappropriate conduct against the Plaintiff(s). The Court made comments at times causing the Plaintiffs to wonder[7]. The court said to Attorney Suslak, "that's between you and Travelers and God..." that appeared in court on December 1, 2015 and did not sever away from the case during

---

[6] See criminal court Docket No. 1152cr00095.
[7] The court said to defense, "...your experts are all looking down the barrel of their guns." Tr. p. 9 ¶¶ 21-22.

3

Plaintiff's pre-trial hearing. Tr. p. 5 ¶¶ 14-15. Arguments ensued due to defense counsel's gross dishonesty as it pertains to the Plaintiff's medical records (HIPAA); when Plaintiff's counsel objected to the dishonesty the Court attacked the Plaintiff stating, "I like to think of this courtroom as a recrimination free zone." Tr. p. 23 ¶¶ 15-16. The Court advised the Plaintiff's then counsel, "...you should know better, sir, to rely on HIPAA is clearly not the law." Tr. p. 26 ¶¶ 12-13. The Court with bias, attacked the Plaintiff's witnesses on the list that caused many of them to be removed who was scheduled to testify the following day by stating she was a fly in the ointment[8]. Tr. pp. 418-419. Although, the Court has never met the Plaintiff's witness; this caused the Plaintiff's attorneys to excuse the witness to appease the judge's emotions. The Court made statements and requested the Plaintiff to repeat her false statement to the jury about how the Plaintiff got gaps in her treatment. Tr. p. 424. The Court diminished the Plaintiff's rights to call witnesses and to present evidence on her behalf entirely. The Plaintiff never got a fair trial and information was circulated that were untrue by the Court without factual evidence to support its allegations. The court allowed unreasonable orders such as telling the Plaintiff's attorney she was not allowed to present her certified medical exhibits to the jury without defense approving their last minute request for redactions on the Plaintiff's exhibits, and the defense never approved the exhibits presented to them before the Plaintiff's case rested, etc. Tr. pp. 99-102. The Plaintiff filed an appeal and it was based on inaccurate decisions while attacking the Plaintiff with untruthful allegations pertaining to the medical records and proper addendums under HIPAA guidelines. The Plaintiff requested an Application for Further Appellate Review ("FAR") and it was denied in 2017.

---

[8] The Fly in the Ointment was renamed from the Ten Little Niggers in "A Nigger in the Woodpile." https://en.wikipedia.org/wiki/Nigger_in_the_woodpile.

4

12. The Plaintiff previously sought damages in the US District Court. *See* Massachusetts U.S. District Court 17-CV-12384. The U.S. District Court stated "...there is no explicit or implicit suggestion that Judge Giles violated a declaratory decree or **that declaratory relief was unavailable to Leslie** in the underlying state court matter." Page 4 in the decision to dismiss under subject matter and immunity.

13. The same Court presided over the Plaintiff's remaining case against the insurance company (Travelers) for its unfair deceptive practices heard on July 24, 2018. The presiding Judge should have recused herself from the matter. When the case was called the Court immediately stated and pointed to the back of the courtroom, "Ms. Leslie can take a seat in the back, please. Thank you. Only attorneys. Thank you." Tr. p. 3, ¶¶ 11-13. The issues involved the insurance company misrepresented its policy limits etc., and their abusive surveillance that included but not limited to the investigator tailgating and blocking the Plaintiff and her daughter down a dead end street and refusing to leave; trespassing on the Plaintiff's daughter's after school program; the investigator hid behind the school's van and videotaping the little girls including the Plaintiff's child at Girls Inc. The Plaintiffs were denied discovery after the insurance company requested to stay discovery when they "allegedly" severed away as a party from the case in April 2014. Plaintiffs' counsel argued about the lack discovery and the insurance company admitted to surveilling Ms. Leslie. The Court said, "you engaged in a little bit of discovery." Tr. p. 7, ¶¶ 8-9. Plaintiffs tried their best to have the Court understand they were deprived of continuing discovery earlier on due to the defense request to stay discovery when it severed away as a party from the case. Travelers never severed away from the case and defied the Plaintiff's request to not attend her children's deposition at the remaining parties request in August 2014. The Court

5

was often defensive and dismissive and stated, "Who cares?" Tr. p. 9, ¶ 12.  The Court stated, "they admitted in hired an investigator, but not one to surveil your client." Tr. p. 14, ¶¶ 22-23.  The attorney for Travelers, Brian Suslak responded, "Your Honor. Our investigator hired by Travelers did surveil Ms. Leslie." Tr. p. 15, ¶¶ 4-5 etc.

14. The Court proceeded to disparage and interrupt Plaintiffs' counsels to deprive[9] them on making their defense argument on record. Tr. p. 16.  Despite the insurance admissions to conducting surveillance the Court argued, "No, you know you're asserting that they have an investigator. Yes, they have an investigator but not one to surveil your client." Tr. p. 18, ¶¶ 1-3.  Ms. Leslie saw the obvious bias and questionable impartiality and respectfully asked the Court to recuse herself from her case.  The Court responded, "okay." Tr. p. 24.  Ms. Leslie left the court room due to the Court's demeanor and obvious bias towards her as the Court was unwilling to state the truth in the facts on record, including not crediting the affidavit(s) filed in the records.  The Court dismiss the Plaintiffs' case denying the defendants surveilled the Plaintiffs.  The Plaintiffs appealed.  The panel affirmed and denied the surveillance and gave no credit about the affidavit and lack of discovery, despite the Court's website stated in its decision that the Plaintiffs' "needs discovery" on April 2014.  A FAR was denied in December 23, 2019 and the Plaintiff never received written notice and saw the decision online on the Court's website on September 21, 2020.

---

[9] Countless attorneys in other cases made claims against the judge including but not limited to, it was acting bias, disparaging and in collusion with defense in *Sullivan v. Connolly*, 91 Mass.App.Ct. 56, 61 (2017); the judge wrongfully accused Lori Holland of bankruptcy fraud (see brief of Holland pages 42-43) in *Holland v. Kantrovitz*, 92 Mass.App.Ct. 66 (2017); Racially inappropriate jury conduct and racial bias jury selection where judge Giles actions and inactions promoted racial bias in *Commonwealth v. McCalop*, SJC 12845 (2020) and *Commonwealth v. Ortega*, 480 Mass. 603 (2018); the court has been accused of hating negros- http://dennerlaw.blogspot.com/2009/02/spotlight-on-massachusetts-judge-linda.html (2009); the court has been accused of writing alternative theory/facts to deprive plaintiff(s) of fair compensation in the case of Papadopoulos who was an elderly man in a slip and fall case https://www.salemnews.com/news/local_news/appeals-court-reverses-judge-in-peabody-slip-and-fall-case/article_418a3b70-906d-5399-9b1f-9ffd7d2c1198.html (2015) etc.

## BACKGROUND ABOUT PRESENT ISSUE

15. The Plaintiff was requested to undergo an "alleged" Independent Psychiatric Evaluation ("IME") with Dr. Bodkin by Attorney Joseph Aronson for Barrett and Kingstown on January 26, 2015. For safety, Ms. Leslie requested consent for her to personally record and it granted.

16. On Monday January 26, 2015 at approximately 10:00 am the Plaintiff was dropped off at the McCormack Firm, LLC in Suffolk County for an IME to be conducted by Bodkin. The Plaintiff was compelled to attend the defendants' purported IME through threats of a motion to compel by Kingstown and Barrett's attorney. Initially, the defendants stated they would advance taxi fare for transportation to McLean Hospital where Bodkin worked, and they later reneged on their agreement to pay.

17. Bodkin was in the practice of medicine[10] under HIPAA 160.103[11] when he was hired or retained to conduct the IME and was required to use a standard of care or degree of care and skills as any competent psychiatrist engaged in similar practice under similar circumstances.

18. The IME took place near the front entrance of the Firm, in a glass front conference room across from the secretary's desk where there was little or no privacy and not within the guidelines with medical practice or ethical guidelines when conducting an IME in a private settings because frequent foot traffic[12] can be seen and heard.

19. The defendants who were not a participant to the IME recorded the Plaintiff without her

---

[10] Massachusetts 243 CMR 2:01 (a) and (b).
[11] Bodkin is a healthcare provider because he was conducting "diagnostic" "assessment or procedure with respect to the physical or mental condition, or functional status, of an individual or that affects the structure or function of the body."
[12] There were a delivery man and people frequenting the firm, appearing to be outside clients walking in and out.

7

consent on a laptop device that violated Massachusetts wiretapping law on seeking consent to record and or federal law during a confidential medical evaluation.

20. Bodkin's conduct during his four hours of interrogation was beyond any bounds of decency and was conducted to cause the Plaintiff further mental distress. Bodkin did not instruct the Plaintiff she was entitled to take a break during the four-hour long interrogation although he knew she was uncomfortable being in the conference room and Plaintiff cried to Bodkin about her feelings of being humiliated and complaints of pain. Bodkin ignored her plea. He failed to inform the Plaintiff she was free to not answer questions especially questions outside the scope of the IME.

21. Bodkin called the Plaintiff a "GAL," more than twice, and asked if she was a jealous woman when it comes to men? Many of the questions went beyond the scope of any decency and was intentionally threatening to do harm to the Plaintiff, including accusing Ms. Leslie of having an aunt named Veira, and Ven-g; Ms. Leslie chuckled in embarrassment and told him she did not have an aunt by that name. He pressed on to know the name of the aunt and when Ms. Leslie was reluctant to provide him with a name, he became angry, clenched his teeth, made an angry face and rolled his fingers into a fist and demanded, "what's her name!" Bodkin did this throughout the evaluation whenever he was not satisfied with her answers; he degraded the Plaintiff's feelings of her love one(s), he was overly intrusive in the Plaintiff's love life, religion, and prior marriage. He asked discriminatory questions, such as, whether her grandparents were married and if they were both "BLACK" and if her mother was fully "BLACK;" Bodkin asked, "what do your **MAMA** do for work;" he asked including but not limited to sex, race, Lord/God, rectum, dry mouth, pee, stomach and period. He pressed on for answers in an aggressive manner

after she answered his questions in the negative, despite Plaintiff answering the questions in the negative to any drug or alcohol use he proceeded to ask the same questions about if she ever indulge in marijuana or cocaine or has she ever drank a day in her life.

22. Bodkin interrogated the Plaintiff and his questions was beyond the scope of the duty of an IME by degrading her treating providers in her presence; he made treatment statements that he has "AWESOME CURES" regarding her PTSD/Anxiety when Plaintiff was not there for any of his "AWESOME CURES."

23. Bodkin laden his March 11, 2015 IME report with false information under oath, including but not limited to the driver did not hear Ms. Leslie's horn beep, when in fact the driver testified, he heard the horn beep in the criminal court.

24. Bodkin under oath stated in his report he had Ms. Leslie's medical records available to him as of May 22, 2013, prior to Ms. Leslie filing any lawsuit.  Ms. Leslie never gave Bodkin her medical records prior to suit and met him for the first time on January 26, 2015.

25. On December 10, 2015 via pre-recorded video deposition under oath, Bodkin suggested to put pills into the Plaintiff cheerios (sic) without her consent; he further fabricated statements under oath about Ms. Leslie when she never told him, and he vowed Ms. Leslie told him.

26. Bodkin's testimony was used against Ms. Leslie to procure a wrongful judgment against her and to deprive her children of a fair compensation.

27. Bodkin went beyond the standard of care required in conducting an IME and did not conduct the IME in what any reasonable and ordinary psychiatrist would do.  Bodkin's conduct during the evaluation deviated from the standard of care during the practice of medicine and as a result Plaintiff was further injured.

28. Bodkin's interrogation caused the Plaintiff mental distress of further anxiety, anger, and fear of doctors in similar field and as a result of his false reporting Plaintiff incurred monetary loss.

## PROCEDURAL BACKGROUND AT ISSUE

29. On November 10, 2017, Barrett and Kingstown's previous attorney (Joseph Aronson) wrote it was Travelers Insurance Company that retained Bodkin, although they were severed away from the case since on or about April 4, 2014.

30. On November 27, 2017, Travelers attorneys (Brian Suslak and John Graceffa) wrote it was Joseph Aronson who retained Bodkin, although Aronson denied this.

31. The Plaintiff filed a medical malpractice and other claims in Essex Superior Court on December 22, 2017 against Bodkin and the three defendants involve in the underlying case for their involvement in retaining Bodkin.

32. In March 2018, Bodkin requested a medical tribunal and filed a motion to dismiss that he was immune under the absolute privilege. Plaintiff filed an opposition and provided case laws where the absolute privilege does not apply to IME and or medical malpractice cases. The Plaintiff served discovery to Bodkin and he filed a motion to stay it; Plaintiff opposed the motion. The motion was heard and his attorney (John Puleo) never filed a notice of appearance as stated by the court. Bodkin's motion was allowed on April 26, 2018.

33. On May 31, 2018, Bodkin's motion to dismiss was heard; Bodkin's attorney (John Puleo) did not file a notice of appearance when he appeared for the second time in court and stated to the court in response, "I note for the record that Mr. Hamrock did not include me on the pleading." Tr. p. 2 ¶¶ 23-24.

34. Bodkin implied the Court appointed him on Ms. Leslie's case, although the court is supposed to remain impartial. Tr. p. 9 ¶¶ 2-3.  The court (Judge Janice Howe) allowed the dismissal under the absolute privilege on June 11, 2018, despite the voluminous supporting case laws.

35. The remaining three defendants who were now represented by Travelers' counsels filed a motion to dismiss and it was heard on April 19, 2018.  During the Plaintiff's oral argument, the defendants' attorney interrupted Ms. Leslie to state false information on the record; the Plaintiff redirected the court (Judge Janice Howe) and informed her it was not true.  The Court relied on the defendants' false statement and did not correct the inappropriate behavior of counsel's interruption.  Tr. pp. 42-43.  The court denied the remaining defendants' motion to dismiss on April 23, 2018.

36. When the remaining defendants failed to file an answer to Plaintiff's complaint, she filed a request for default on May 23, 2018. During Bodkin's motion to dismiss the remaining defendants' counsel (Suslak) came into court and interrupted by boldly bullying the Plaintiff for exercising her Procedural Due Process Rights.  Suslak said, "If we have to come back here to argue this motion, that we're probably going move for costs against Ms. Leslie..."  Tr p. 22, ¶¶ 19-21.  The Court said, "Well, I'll take a look at the motion—the request for the default." Tr. p. 23¶¶ 2-3. This issue remains outstanding by the lower court.

37. On June 4, 2018, the defendants mailed an emergency motion opposing the Plaintiff's request for default and the Plaintiff timely opposed.

38. Before any decision was made on the request for default, the remaining defendants filed a motion for summary judgment, relying on Bodkin's dismissal from the case.  Plaintiff timely opposed it and attached two countervailing affidavits. The motion was heard on

11

October 11, 2018 by the Court, and the court said, "Well, this all sounds terrible, like a terrible conduct by Dr. Bodkin.  But another Judge at this Court found he had an absolute privilege, so that you can't sue on it." Tr. p. 21, ¶¶ 10-11.  The Court allowed the remaining defendants' motion on a summary judgment yet could determine who retained Bodkin.

39. Plaintiff filed a motion for clarification against Bodkin and a motion to reconsider the dismissal on a summary judgment and it was denied.

40. The Plaintiff filed an appeal.  The Plaintiff was treated unfairly by the panel where it told Ms. Leslie upon her questioning whether they will be asking her any questions during oral argument after the panel concluded the instruction on timing for each party.  The panel (the lead judge) told the Plaintiff they will not be asking her any questions.  The unfairness could be proven by observations based on the other five cases heard that day where the other Appellants' and pro se Appellants were engaged by the panel, except Ms. Leslie on YouTube.

41. On December 7, 2020, the Lower Court mailed its decision/rescript of the original judgment affirming dismissal to the Plaintiff, where Bodkin was immune from suit etc.

## STANDARD OF REVIEW

42. This case raises federal questions under the Constitution 14th Amendment Due Process Rights, the Equal Protection of the Law, the Federal Health Insurance Portability and Accountability Act 1996 as amended ("HIPAA"), Massachusetts Declaration of Rights, Articles 11 and Article 29.

## I.     ARGUMENT AND CLAIMS

**COUNT I: THE ORDER/DECISION VIOLATES HIPAA UNDER FEDERAL GROUNDS**

43. Plaintiff incorporates herein all prior allegations by reference in this Complaint as set forth hereto on the entirety of paragraphs 1-42.

44. Doctor J. Alexander Bodkin was conducting "diagnostic" "assessment respect to the physical or mental condition, or functional status, of an individual or that affects the structure or function of the body." HIPAA § 160.103. According to the laws of the federal and state court whenever a doctor's conduct towards his/her examinee caused the examinee harm. The examinee can sue the doctor for medical malpractice.

45. There is no immunity to commit medical malpractice under HIPAA and or Massachusetts laws.

46. Plaintiff is entitled to injunctive and declaratory relief to prohibit and invalidate the order that a doctor governed under HIPAA in a medical malpractice case is immune and is absolutely privilege.

**COUNT II. <u>THE ORDER/DECISION VIOLATES PLAINTIFF'S MASSACHUSETTS DECLARATION OF RIGHTS, UNDER ARTICLES, 11 and 29</u>**

47. Plaintiff incorporates herein all prior allegations by reference in this Complaint as set forth hereto on the entirety of paragraphs 1-46.

48. "Every subject of the commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he (she) may receive in his (her) person, property, or character. He (she) ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws." The Plaintiff was completely deprived of bringing her injuries or wrongs before a jury that affected her persons and character because it was dismiss from the onset.

49. "It is essential to the preservation of the rights of every individual, his (her) life, liberty, property, and character, that there be an impartial interpretation of the laws, and administration of justice. It is the right of every citizen to be tried by judges as free, impartial and independent as the lot of humanity will admit. It is, therefore, not only the best policy, but for the security of the rights of the people, and of every citizen..." The Plaintiff was deprived of her life, liberty and character by an impartial interpretation of the laws and administration of Justice under the state.

50. The Plaintiff was not tried by judges free, impartial and independent as the lot of humanity admit, and therefore she was deprived of the security of her rights.

51. Plaintiff is entitled to injunctive and declaratory relief to prohibit and invalidate the order that a doctor governed under HIPAA in a medical malpractice case is absolutely privilege.

## COUNT III. THE ORDER/DECISION VIOLATES PLAINTIFF'S DUE PROCESS RIGHTS UNDER THE 14TH AMENDMENT AND EQUAL PROTECTION OF THE LAW

52. Plaintiff incorporates herein all prior allegations by reference in this Complaint as set forth hereto on the entirety of paragraphs 1-51.

53. Massachusetts Declaration of Rights guarantee that every person has equal protection under the law that is similar to the United States Constitution 14th amendment guarantee of equal protection. The Equal Protection Claus states that no person shall be denied the same protection of the laws that are enjoyed by other persons in their lives, liberty and property in their pursuit of happiness. The government ("Court") may not deny people equal protection when governing its laws. The government must treat an individual the same manner as others in similar circumstances. The Plaintiff was treated differently on its face.

54. In these instance case previously cited by the Plaintiff in the state court, doctors were sued for medical malpractice while in the practice of medicine in Massachusetts regardless of their status in their immediate community.  These cases involved doctors who were sued due to medical malpractice during an IME or medical procedures, *Lambley v. Kameny*, 43 Mass.App.Ct. 277, 283-284 (1997), *Sugarman v. Bd. Of Registration in Medicine*, 422 Mass. 338 (1996), *Parr v. Rosenthal*, 475 Mass. 368, 376 (2016), *Levin et. al. v. USA*, 133 S.Ct. 1224 (2013),  *Zucco v. Kane,* 55 Mass.App.Ct. 76, 78 (2002), and *Harding v. Goodman*, *MD* 13 Mass.L.R. 287 (Mass.Supr.Ct. 7/3/01).

55. No one should be exempt from the laws of the land by granting special immunity when they do not qualify.  A doctor and the defendants are not immune from suit when they perform a different function and the conduct is abusive under federal grounds.  These cases are supported by both federal and state Courts.  See *Burns v. Reed*, 500 U.S. 478, 493 (1991). *Kalina v. Fletcher*, 522 US 118, 126-127 (1997), *Mitchell v. Forsyth*, 472 U.S. 511, 520 (1985), *Meltzer v. Grant*, 193 F.Supp.2d. 373, 378 (2002), and *Dear v. Devaney* et al., 83 Mass.App.Ct. 285, 291-293 (2012).

56. An order that dismisses a case that a doctor can claim he is absolutely privileged to commit malpractice is a deprivation of the Plaintiff's rights and is detrimental and infringes on her rights to sue for damages.

57. The doctor's testimony was used against the Plaintiff when no one has claimed to retain him for his testimony, and the court recently implied it doesn't matter who retained him.

58. The Plaintiff was treated differently as the records reflect and no reasonable explanation was provided.

59. Plaintiff is entitled to injunctive and declaratory relief to prohibit and invalidate the order that a doctor governed under HIPAA in a medical malpractice case is absolutely privilege.

## CONCLUSION AND PRAYER FOR RELIEF

The Plaintiff (and her children) will suffer irreparable harm because the judgment prevents the Plaintiff from exercising her civil rights and to seek damages for harm done under state and federal laws. Monetary damages at a later time would not adequately compensate the Plaintiff for her injuries because justice delayed is justice denied. The doctor's conduct was highly inappropriate when he held the Plaintiff in the glass front conference room for 4 hours against her will, and allowed others not privilege to record her without consent in an openly non-private conference room where frequent foot traffic can be seen and heard. The doctor abused his authority by claiming he was immune and absolute privilege to which no one claimed to have retain him, nor can he state how he received Ms. Leslie's medical records without her consent and prior to her filing a suit. An injunction or declaratory relief should be granted against the court's order to prevent grave injustice.

WHEREFORE, pursuant to the facts, and authorities, the Plaintiff Pauline Leslie respectfully requests this Honorable Court to grant the following relief:

1. Declaratory judgment that enforcing a dismissal on the grounds that a doctor under HIPAA is absolutely privileged to commit malpractice during an Independent Medical Evaluation ("IME") violates the Plaintiff's Constitutional rights and statutory rights.

2. Declaratory judgment that enforcing a dismissal on the grounds that a doctor who was not retained by any parties during the Plaintiff's civil case, and whose testimony was used against the Plaintiff to procure a wrongful judgment against her violates the Plaintiff's Constitutional rights and statutory rights.

3. Grant the Plaintiff injunctive relief and a permanent injunctive relief enjoying the Defendant from acting in concert or participating in an order depriving the Plaintiff from bringing her rightful claims before a non-bias and impartial court.

4. Award such other reliefs as this Court deems just, fair and equitable.

Respectfully submitted,

*/s/ Pauline Leslie*

_____
Pauline Leslie, pro se
P.O. Box 8124,
Lynn, MA 01902
781-595-1622.
psalmandluke@gmail.com

December 21, 2020.